# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TROTTER,<br><br>         Plaintiff,<br><br>    v.<br><br>WARDEN PFEIFFER, et al.,<br><br>         Defendants. | Case No. 1:18-cv-00259-LJO-BAM (PC)<br><br>**FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM FOR RELIEF**<br><br>(ECF No. 48)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff James Trotter is a state prisoner currently proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court for screening is Plaintiff's second amended complaint, filed on November 18, 2019. (ECF No. 48.)

**I.    Introduction**

Plaintiff initiated this action by filing his original complaint on January 22, 2018. (ECF No. 1.) On March 22, 2019, the Court screened Plaintiff's complaint and granted Plaintiff leave to file a first amended complaint. (ECF No. 24.) On April 15, 2019, Plaintiff filed a first amended complaint. (ECF No. 27.) On July 3, 2019, the Court issued a screening order finding that Plaintiff's first amended complaint failed to comply with Federal Rule of Civil Procedure 8 and failed to state any cognizable claim for relief. (ECF No. 37.) The Court granted Plaintiff thirty days to either file a second amended complaint or a notice of voluntary dismissal. (Id. at 15-16.) On August 9, 2019, Plaintiff filed a motion for an extension of time to file a second amended complaint. (ECF No. 44.) On August 13, 2019, the Court granted Plaintiff an additional thirty days to file a second amended complaint. (ECF No. 46.)

1

On September 9, 2019, the Court's August 13, 2019 order was returned as "Undeliverable, Unable to Forward." On October 31, 2019, after Plaintiff failed to file a notice of change of address, file a second amended complaint, or otherwise communicate with the Court for more than sixty-three days, the undersigned issued findings and recommendations recommending that this action be dismissed based on Plaintiff's failure to prosecute this action. (ECF No. 47.) The findings and recommendations were served on Plaintiff and contained notice that any objections thereto were to be filed within fourteen (14) days after service. (Id. at 3.)

However, as noted above, Plaintiff filed a second amended complaint on November 18, 2019. (ECF No. 48.) Therefore, on November 21, 2019, the Court vacated the October 31, 2019 findings and recommendations recommending dismissal of this action due to Plaintiff's failure to prosecute. (ECF No. 49.) The Court now screens the second amended complaint.

## II. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be

facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**III.  Summary of Plaintiff's Second Amended Complaint**

Plaintiff is currently housed at Folsom State Prison. Plaintiff alleges that the events at issue in his second amended complaint took place at Kern Valley State Prison ("KVSP"). Plaintiff names the following Defendants: (1) KVSP Warden Pfeiffer; (2) Correctional Officer Garcia; and (3) Correctional Officer Barcia Reign.

Plaintiff alleges as follows: On April 22, 2017, Plaintiff was assigned as a Dining Vocational Trade Worker, section location 004-A 7/8 Dining 2/w, with Position #DRW.004.004.

"06/01/2017 correction officer Garcia briefing had been given by administration staff Facility 'C' and ordering him to comply he personally refused denoucing (*sic*) all good changes, again strongly refusing to hirer (*sic*) anybody, not only White inmates, no Black inmates, and no Asian inmates." (ECF No. 48, at 5.) The Facility C Staff Sergeant requested a list of inmates who qualified for medium custody status to work in the culinary trade. Plaintiff submitted 15 names on a list and another list was submitted, consisting of 10 names of inmates who previously worked for Defendant Garcia and who said that they knew how to work around Defendant Garcia.

However, Defendant Garcia totally ignored "instruction, the list and completely refused hirering (*sic*) inmates who passed all the cook tests White inmates, Black inmates, and Asian inmates, and [Defendant Garcia] again said … [he was] only for my people Mexican inmates this is our Land." (Id.) From June 1, 2017 and on, Defendant Garcia continued opposing all direct orders from administrative staff members to hire inmates of all races in order to balance the ethnic makeup of the kitchen workers.

Plaintiff asserts that "the direct job assignment is headed by designated assignment Lt.

3

(only)[.]" (Id. at 6.) On December 8, 2017, Plaintiff was issued an Inmate Assignment Card for Location YDW.003.005-A Upper Yard 2/w position YDW.003.005. Plaintiff alleges that "Correction Officer Garcia and Facility Lt. who created actual crime both together illegally changing job assignment with no authority." (Id.)

On the night of December 8, 2017, Plaintiff filed a 602 appeal form. Almost immediately after that, Plaintiff was sent another Inmate Assignment Card that reassigned him back to his former Dining Worker position, with an effective date of December 12, 2017. After alerting Management Cook II, Facility Sergeant, and all correctional officers working in the kitchen that he was reassigned to his former Dining Worker position, Plaintiff reported each day to his job assignment, but each time he "was illegally denied and turned away for no reason." (Id.)

Plaintiff subsequently filed a 602 appeal, explaining the situation involving Correctional Officer Garcia. Plaintiff was eventually interviewed by the Facility lieutenant, "who said he already knows and I agreed saying the only computer that change a inmate assignment is Lt., which I said you broke into Lt. assignment office illegally P.C. § 626." (Id.)

"Days later 'punishment' correction officers came to living quarters stating Lt. Facility A want to see me again, I said let's go ready, willing and able, and Correction officer's (*sic*) said turn around and cuff up and I was placed in administrative segregation with no pending rules violation report, no contact with the outside work of any kind substantive right's (*sic*) constitutional violation's (*sic*). Punishment no rights, Punishment no liberty, and miscarriage of justice." Id. Further, Plaintiff alleges that he was "adverse punishment by confinement in a prison cell beyond ten days maximum time period with the right to exercise, as administrative punishment, without his due process right to notice of the cause for confinement." (Id. at 3.) Finally, Plaintiff alleges that Plaintiff alleges his First and Fourteenth Amendments were violated when he was denied access to the court, legal library, legal books, and paper when he was confined to administrative segregation.

Plaintiff seeks declaratory relief and compensatory and punitive damages.

**IV.   Discussion**

    **A.**   **Federal Rule of Civil Procedure 8**

4

1  Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss, 572 F.3d at 969.

Here, while Plaintiff's complaint is short, it is not a plain statement of his claims. Many of Plaintiff's allegations are conclusory statements that are unsupported by facts. For instance, Plaintiff's complaint fails to include sufficient factual allegations to state a claim that is plausible on its face against Defendant Barcia Reign. Plaintiff must plead sufficient factual allegations to inform each named defendant as to the nature of the claims asserted against them. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

**B.  Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff fails to adequately link Defendant Barcia Reign to any constitutional violation. While Plaintiff's second amended complaint includes conclusory legal allegations

against Defendant Barcia Reign, there are no factual allegations identifying Defendant Barcia Reign's asserted involvement in any constitutional violation. At most, Plaintiff's second amended complaint asserts that Defendant Barcia Reign advised Plaintiff that he did not want black and/or white inmates working for him in the culinary vocational jobs at Kern Valley State Prison, but there are no factual allegations to suggest that Defendant Barcia Reign was involved in actually denying Plaintiff an assignment to a culinary vocational job. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### C. Supervisory Liability

To the extent Plaintiff seeks to hold Defendant Pfeiffer liable based solely upon his supervisory role as Warden, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir.2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Here, Plaintiff alleges that Defendant Pfeiffer maintained a correctional officials' practice, policy, and procedure that repudiated Plaintiff's constitutional rights and that Defendant Pfeiffer is, or was in, a position of authority that he could arrange to have the racially-based exclusionary practices cease. However, Plaintiff has failed to allege any facts demonstrating that Defendant Pfeiffer knew of the constitutional violations and failed to act to prevent them. While Plaintiff has

alleged that Defendant Pfeiffer has maintained a policy that repudiated his constitutional rights, Plaintiff has failed to allege any facts identifying the policy that he alleges repudiated his constitutional rights, any facts to support his conclusory allegation that Defendant Pfeiffer implemented this deficient policy, or any facts demonstrating that the deficient policy was the moving force behind the violation of Plaintiff's constitutional rights. In fact, Plaintiff alleges that Defendant Garcia opposed all direct orders from administrative staff members to hire inmates of all races in order to balance the ethnic makeup of the kitchen workers. Thus, Plaintiff's allegations are that Defendant Garcia's actions were unauthorized and not made pursuant to any policy. Therefore, Plaintiff has not pled a cognizable supervisory liability claim against Defendant Pfeiffer. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

**D. Equal Protection**

Plaintiff alleges that his right to equal protection of the laws was violated when, after being told by Defendants Garcia and Barcia Reign that they did not want White, Black, or Asian inmates working for them in the culinary vocational jobs, his prison job assignment was illegally switched by Defendant Garcia and the then-Facility A Yard lieutenant from "Dining Room Worker" to an "Upper Yard position." Further, Plaintiff also alleges that, after he was reassigned back to his former "Dining Room Worker" position a short time later, he was illegally "denied and turned away" each subsequent day that he reported to the kitchen for "no reason." (ECF No. 48, at 6.)

"While the Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment," Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam); see Baumann v. Ariz. Dep't of Corrs., 754 F.2d 841, 846 (9th Cir. 1985), racial discrimination in the assignment of jobs violates equal protection[.]" Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004). The Equal Protection Clause requires that persons who are similarly situated be treated alike. Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, such as race, see, e.g., Thornton

1  v. City of St. Helens, 425 F.3d 1158, 1167; Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th
2  Cir. 2001), or similarly situated individuals were intentionally treated differently without a
3  rational relationship to a legitimate state purpose, Engquist v. Or. Dep't of Agric., 553 U.S. 591,
4  601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd.
5  v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

Here, while Plaintiff alleges that his prison job assignment was switched from a dining worker position to an upper yard position after Defendants Garcia and Barcia Reign stated that they did not want White, Black, or Asian inmates working for them, Plaintiff has not alleged that he is White, Black, or Asian and/or any facts showing that Defendant Garcia and the unnamed then-Facility A Yard lieutenant "came together to illegally change" his job assignment without any authority to do so because Plaintiff is a Black, White, or Asian inmate. Further, while Plaintiff alleges that, after he was reassigned back to a dining room worker position, he was "turned away" each day that he reported to the kitchen for work by unnamed defendants, Plaintiff has failed to allege the identity of the individuals who turned him away each day that he reported for work and/or any facts demonstrating that the unnamed individuals turned Plaintiff away each day that he reported to work because Plaintiff is a Black, White, or Asian inmate. Therefore, Plaintiff has not pled a cognizable Equal Protection claim against Defendants Garcia and Barcia Reign. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

**E.  Deprivation of Property**

Plaintiff alleges that Defendant Garcia confiscated all or some of Plaintiff's legal documents.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized, intentional deprivations of property are actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). However, unauthorized

intentional and/or negligent deprivations of property do not constitute a violation of the procedural component of the Due Process Clause of the Fourteenth Amendment so long as the state provides an adequate post-deprivation remedy. Hudson, 468 U.S. at 533; Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994).

Here, Plaintiff has not alleged any facts demonstrating that Correctional Officer Garcia's confiscation of his legal documents was both intentional and authorized. Further, to the extent that Plaintiff's claim that his legal documents were confiscated is based on an unauthorized deprivation of property, Plaintiff has an adequate post-deprivation remedy under California law. Plaintiff may not pursue a due process claim arising from the unauthorized confiscation of his legal documents. Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895). Therefore, Plaintiff has not pled a cognizable claim against Defendant Garcia for deprivation of property in violation of the Fourteenth Amendment. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### F. Interference With Access to Courts

Plaintiff alleges that, when he was punished "by confinement in a prison cell beyond ten days maximum time period[,]" he was denied access to the courts, the law library, legal documents, books, and paper. (ECF No. 48, at 3.)

Prisoners have a "fundamental constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 828 (1977). The right of access is grounded in the First and Fourteenth Amendments. Silva v. Di Vittorio, 658 F.3d 1090, 1101–02 ("Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances."); Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995) ("The right of access is grounded in the Due Process and Equal Protection Clauses.").

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). In order to allege a violation of the right to access the courts, an inmate must demonstrate that he suffered an actual injury by pleading facts showing "actual prejudice

9

with respect to contemplated or existing [non-frivolous] litigation, such as the inability to meet a filing deadline or to present a claim." Lewis v. Casey, 518 U.S. 343, 348 (1996). The injury requirement is not "satisfied by just any type of frustrated legal claim." Id. at 354–55. It is only satisfied if an inmate is denied access with regard to direct criminal appeals, habeas corpus petitions, and civil actions brought pursuant to 42 U.S.C. § 1983. Id. "Failure to show that a 'nonfrivolous legal claim ha[s] been frustrated' is fatal" to a denial of access to the courts claim. Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008).

Here, first, Plaintiff has not identified any defendants who allegedly interfered with his constitutional right to access the courts. Second, Plaintiff has failed to allege any facts demonstrating that Plaintiff suffered actual prejudice with respect to any contemplated or existing non-frivolous litigation as a result of being denied access to the courts, the law library, any legal documents, books, and paper while he was either confined to administrative segregation. Therefore, Plaintiff has not pled a cognizable claim for denial of access to the courts. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### G.     Retaliation

Plaintiff alleges that unidentified defendants retaliated against him after he exercised his right for redress of his grievances.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d

1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." Watison, 688 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. Id. The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. Rhodes, 408 F.3d at 567–68. The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Watison, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." Id.

Here, Plaintiff has only asserted a conclusory allegation that he was subject to retaliatory conduct after he exercised his right to redress his grievances. Plaintiff has not alleged any facts demonstrating that a named Defendant took some adverse action against Plaintiff because of Plaintiff's protected conduct, that the adverse action chilled Plaintiff's exercise of his First Amendment rights, and that the adverse action did not reasonably advance a legitimate penological goal. Therefore, Plaintiff has not pled a cognizable claim for retaliation in violation of the First Amendment. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

**H.    Administrative and/or Disciplinary Segregation**

Plaintiff alleges that he "was adverse[ly] punish[ed] by confinement in a prison cell beyond ten days maximum time period with the right to exercise, as administrative punishment, without his due process right to notice of the cause for confinement." (ECF No. 48, at 3.) Plaintiff further alleges that this confinement also violated his Eighth Amendment protection against cruel and unusual punishment.

1.    Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and

11

from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer v. Brennan, 511 U.S. 847 (1994); Frost v. Agnos, 152 F.2d 1124, 1128 (9th Cir. 1998).

Here, since Plaintiff has not alleged facts establishing that he was deprived of adequate food, drinking water, sanitation, and/or personal hygiene items while he was confined to a prison cell beyond 10 days, Plaintiff has failed to allege facts demonstrating that Plaintiff was subjected to conditions sufficiently grave to fall within the purview of the Eighth Amendment.  May v. Baldwin, 109 F.3d 557, 565-66 (9th Cir. 1997).  Further, Plaintiff has not alleged any facts showing that any named Defendant knowingly disregarded a substantial risk of harm to Plaintiff.  Therefore, Plaintiff has not pled a cognizable Eighth Amendment claim.  Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

2. Fourteenth Amendment

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  To plead a procedural due process violation, a plaintiff must allege: (1) that the state interfered with a life, liberty, or property interest; and (2) the procedures used to deprive such interest were constitutionally insufficient.  Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1990).  Liberty interests may be found in either the Due Process Clause of the Fourteenth Amendment or in state law.  Chappell v. Mandeville, 706 F.3d 1052, 1062 (9th Cir. 2013).

The U.S. Supreme Court has held that "[as] long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is

not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Hewitt v. Helms, 459 U.S. 460, 468 (1983), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472, 480-84 (1995). Initially, the law is clear that time spent in administrative segregation and/or disciplinary segregation is the type of condition of confinement ordinarily contemplated by a prisoner's sentence. Sandin, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."); Hewitt, 459 U.S. at 468 ("It is plain that the transfer of an inmate to less amendable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. … . Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."); Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (stating that "unlike a convicted prisoner, a pretrial detainee may have a liberty interest in not being placed in disciplinary segregation"); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (finding no liberty interest in avoiding placement in disciplinary segregation before a disciplinary hearing). Further, Plaintiff has failed to allege any facts demonstrating that the conditions or degree of disciplinary confinement to which he was subjected was otherwise violative of the Constitution. Therefore, Plaintiff has not established that the Due Process Clause afforded him a protected liberty interest in avoiding confinement in administrative and/or disciplinary segregation without notice of the cause for confinement or a disciplinary hearing.

"[H]owever, … a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations[.]" Wilkinson v. Austin, 545 U.S. 209, 222 (2005). State-created liberty interests are "generally limited to freedom from restraint which, will not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84.

Here, Plaintiff relates few facts of his confinement in disciplinary and/or administrative segregation beyond a vague allegation about its length – more than ten days – and the conclusory

assertion that he was denied access to the court, the law library, legal documents, books, and paper. However, Plaintiff has not alleged any facts comparing the conditions of his confinement in disciplinary and/or administrative segregation to any other conditions at Kern Valley State Prison, whether in segregation or in the general population. Further, Plaintiff has failed to plead facts establishing the duration of his disciplinary and/or administrative segregation, the degree of restraint imposed, and/or whether his segregation will invariably affect the duration of his sentence. Therefore, Plaintiff has failed to establish that his confinement in disciplinary and/or administrative segregation "present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486. Consequently, Plaintiff has not pled a cognizable Fourteenth Amendment due process claim. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### I. Violation of 42 U.S.C. § 1981

Plaintiff alleges that Defendants Garcia and Barcia Reign "deliberately[,] or with conscious disregard[,] egregiously denied [Plaintiff the] equal ben[e]fits of all laws and proceeding[s] for the security of his person and property as is enjoyed by Mexican[s.]" (ECF No. 48, at 7.)

42 U.S.C. § 1981(a) provides, in relevant part, that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory … to the full and equal benefit of all laws and proceedings for the security of persons and property as it enjoyed by white citizens[.]" Section 1981 "can be violated only be purposeful discrimination," General Bldg. Contractors Ass'n Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982), and a plaintiff must plausibly allege 'intentional discrimination on account of race." Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989). The complaint must set forth "overt acts" of discrimination and contain facts to establish that the defendant's conduct was motivated by racial animus. Id. at 1345.

Here, Plaintiff has failed to allege facts demonstrating that Defendants Garcia and Barcia Reign, motivated by racial animus, committed some overt act or acts that deprived Plaintiff access to any law and/or proceeding that would have allowed him to secure his person and/or his

14

property.  Therefore, Plaintiff has not pled a cognizable claim for a violation of 42 U.S.C. § 1981.  Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

**J.     Conspiracy in Violation of 42 U.S.C. § 1985(3)**

Plaintiff alleges that Defendants Garcia and Barcia Reign conspired together in violation of 42 U.S.C. § 1985(3) in order to deprive Plaintiff of the equal protection of the laws based on racial discrimination, to deprive Plaintiff of due process of the law, and to hinder their supervisors from being notified about all of their unconstitutional actions.

Section 1985(3) creates a civil action for damages caused by two or more persons who "conspire … for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy."  42 U.S.C. § 1985(3).  The elements of a 1985(3) claim are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Fazaga v. FBI, 916 F.3d 1202, 1245 (9th Cir. 2019).

In order to adequately allege the first element, Plaintiff must allege specific "facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient."  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).  The second element requires that some racial or otherwise class-based "invidiously discriminatory animus" behind the conspirators' actions.  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993).  Finally, a plaintiff cannot state a conspiracy claim under § 1985 in the absence of a claim for deprivation of rights under 42 U.S.C. § 1983.  See Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989) (holding that "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations")

Here, first, Plaintiff's allegations of conspiracy are conclusory and unsupported by any

15

specific facts.  There is no indication of how Plaintiff knows that the Defendants conspired against him, nor is there any description of what act(s) the Defendants took in furtherance of the alleged conspiracy.  Second, since Plaintiff has failed to allege a cognizable § 1983 claim, Plaintiff's § 1985(3) claim also fails.  Therefore, Plaintiff has not pled a cognizable claim of conspiracy in violation of 42 U.S.C. § 1985(3).  Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### K. Violation of 42 U.S.C. § 2000a

Plaintiff alleges that his civil rights protected by 42 U.S.C. § 2000a were violated.

However, 42 U.S.C. § 2000a only prohibits discrimination or segregation in places of public accommodation, which does not include prisons.  42 U.S.C. § 2000a(b); see Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir. 1994) (Title II which prohibits discrimination in places of public accommodation covers only places, lodgings, facilities and establishments open to the public); Nance v. Ryan, No. CV 15-0923-PHX-SMM (DKD), 2015 WL 4528909, at *4 (D. Ariz. Jul. 27, 2015) (prisoner's complaint dismissed for failure to state a claim.) The Court has found no authority to support that state prisons constitute places of public accommodation. Further, state action for purposes of § 2000a(d) means discrimination or segregation carried on (1) under color of any law, statute, ordinance, or regulation, (2) carried on under color of any custom, or usage required or enforced by officials of the state, or (3) required by action of the state. 42 U.S.C. § 2000a(d). Therefore, Plaintiff has not stated a cognizable claim for violation of 42 U.S.C. § 2000a.

### L. State Law Claim for Violation of California's Unruh Civil Rights Act

Plaintiff alleges that Defendants Garcia, Barcia Reign, and Pfeiffer violated California's Unruh Civil Rights Act when they excluded Plaintiff from prison employment due to his race.

California's Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their … race, color, ancestry, national origin, … citizenship, … or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

However, first, prisons are not business establishments under California Civil Code § 51. Wilkins-Jones v. County of Alameda, 859 F. Supp. 2d 1039, 1048-49 (N.D. Cal. 2012); Taormina v. Cal. Dep't of Corr., 946 F. Supp. 829, 834 (S.D. Cal. 1996). Second, "the Unruh Civil Rights Act has no application to employment discrimination." Rojo v. Kliger, 52 Cal. 3d 65, 77 (1990); see also Bass v. County of Butte, 458 F.3d 978, 981-83 (9th Cir. 2006). Therefore, Plaintiff has not stated a cognizable claim for a violation of California's Unruh Civil Rights Act against Defendants Garcia, Barcia Reign, and Pfeiffer.

**V.       Conclusion and Recommendation**

For the reasons discussed herein, Plaintiff's second amended complaint fails to state a cognizable claim for relief. Despite being provided with the relevant pleading and legal standards in the Court's prior orders screening Plaintiff's original and first amended complaints, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

These findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 19, 2019**          /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE

18